FILED
2003 NOV 20 A 8:45
CLERK, US DIST. COURT
EASTERN DIST. OF CALIF
BY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR YAMAMOTO, BY AND THROUGH HIS GUARDIAN AD LITEM HUGO YAMAMOTO,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA, TENET HEALTHCARE CORPORATION, DOCTORS MEDICAL CARE OF MODESTO, ANDREW JARAMILLO, M.D., PATTERSON HOSPITAL DISTRICT, MAXINE INGRAM, M.D.<br>Defendants. | CIV F-00-5588 OWW/SMS<br><br>MEMORANDUM OPINION AND ORDER RE: REMOVAL OF HUGO YAMAMOTO AS GUARDIAN AD LITEM TO PLAINTIFF HECTOR YAMAMOTO |

Before the court is defendant's motion which requests the court evaluate the fitness of plaintiff's guardian ad litem, Mr. Hugo Yamamoto. Mr. Yamamoto did not file an opposition. Defendant Andrew Jaramillo filed a Joinder in the United States' further memorandum concerning review of appointment of guardian ad litem and a declaration from his attorney, Michael R. Mordaunt. Doc. 138. This matter was initially heard September 22, 2003.

At the September 22, 2003, hearing it became obvious that

Mr. Yamamoto opposed his removal as Guardian ad Litem for Hector Yamamoto and it was established he is without funds to hire an attorney. The Court appointed Richard C. Watters of Fresno, California, an experienced Plaintiff's trial lawyer in the field of Plaintiff's personal injury and medical malpractice law to represent Mr. Yamamoto. Mr. Watters agreed to serve as Mr. Yamamoto's attorney for the purposes of the removal proceedings, without compensation.

After Mr. Watters was given opportunity to meet and fully consult with Mr. Yamamoto, provided the motion and all related papers, the two *in camera*, sealed reports of the Magistrate Judge and Judge Gaek, who have conducted settlement proceedings in the case; and met and counseled with Mr. Yamamoto, the matter came on for further hearing November 3, 2003.

At the hearing, Mr. Yamamoto objected to any settlement of the case, but declined to provide any other factual or legal basis for his opposition to the removal motion.

## I. BACKGROUND

Plaintiff's second amended complaint was filed May 3, 2001 and alleges medical negligence, failure to obtain informed consent, and negligent selection, hiring, and retention of emergency room physicians. *See* Doc. 43. Plaintiff, four year old Hector Yamamoto, received emergency medical care from defendants over the course of several weeks in 1997. *Id.* Through his guardian ad litem, plaintiff contends the medical care he received caused the following injuries: respiratory arrest, damage to the central nervous system, quadriplegia, brain damage and other injuries presently undiagnosed. *Id.*

Mr. Yamamoto, plaintiff's father, was appointed guardian ad litem based upon his ex parte application, without a hearing, on April 18, 2000. Doc. 121 at 2. Three separate settlement negotiations occurred in 2002 and 2003. Based upon Mr. Yamamoto's behavior during the settlement negotiations, an issue of his competence to act as his son's guardian ad litem has arisen. The court appointed mediator, Judge Kenneth D. Gack submitted a report, under seal, regarding his concerns about the guardian ad litem's ability to represent the best interests of the plaintiff. The Magistrate Judge, Sandra Snyder, had extensive communications with Mr. Yamamoto in her conduct of a settlement conference. The Magistrate Judge filed her declaration questioning the ability of Mr. Yamamoto to serve as an independent and objective guardian.

On March 11, 2003, Defendant United States requested the court review the appointment of Hugo Yamamoto, plaintiff's father, as guardian ad litem. *See* Doc. 121. Defendant United States requested the review because of the possibility that, "if defendants prevail at trial, an issue on appeal will be that defendants failed to take action when they became aware that there were reasons to question whether the appointment of Hugo Yamamoto as guardian ad litem was still appropriate and served the best interests of the plaintiff." *Id.* at 1.

On April 30, 2003, Magistrate Judge Sandra M. Snyder ordered a hearing regarding defendant United States' motion, scheduled for June 16, 2003. Doc. 126. On May 28, 2003 magistrate Judge Snyder vacated the hearing and issued findings and recommendations which recommended the District Court "review the

status of the guardianship and explore the competence of the present guardian to control and direct the present litigation on behalf of the minor plaintiff." Doc. 131 at 3. Based upon the Magistrate Judge's observations over many hours with a guardian ad litem "in the course of the settlement proceedings," as well as the confidential report by a mediator regarding the VDRP mediation discussions which preceded the settlement conference, the Magistrate Judge questions the competence of the guardian ad litem to direct and control the litigation and to help the court secure a just and efficient resolution to the action. *Id.*

On July 24, 2003, the Magistrate Judge's findings and recommendations (Doc. 131) were adopted and a hearing was ordered to determine the fitness and competence of the guardian to continue to serve in this case as personal representative for, and to control and direct the present litigation on behalf of, the minor plaintiff. Doc. 134 at 2.

Defendant United States submitted a supplemental memorandum supporting review of the guardian ad litem on September 2, 2003. Doc. 137. Mr. Yamamoto did not file an opposition. Defendant Andrew Jaramillo filed a Joinder in the United States' further memorandum concerning review of appointment of guardian ad litem and a declaration from his attorney, Michael R. Mordaunt. Doc. 138. Magistrate Judge Sandra Snyder submitted a confidential declaration, under seal, on September 17, 2003. Doc. 139. This matter was heard September 22, 2003.

At the second hearing, Mr. Yamamoto continued to object to his removal as guardian. It was conclusively established by clear and convincing evidence that Mr. Yamamoto has been and is

presently unwilling to negotiate or to consider a settlement of this case, except on terms that Plaintiff's counsel, Thomas Brandy, believes are unrealistic and cannot be achieved. (The non-negotiable figure mentioned in Court by Mr. Yamamoto for settlement of the case is $16,000,000.) Upon further inquiry from the Court at the second hearing, it is established by clear and convincing evidence, that Mr. Yamamoto is unwilling to consider settlement and is unwilling to engage in any meaningful settlement negotiations.

The Court further determined that a highly competent work-up of the case has been accomplished by the Brandi law firm. If necessary, Mr. Brandi and his law firm are ready to take the case to trial and are fully prepared to do so. This was confirmed by Mr. Watters, independent counsel for Mr. Yamamoto. It is in the best interests of the minor that the possibility of settlement and non-judicial resolution of the case be reasonably considered and pursued to completion.

The present guardian has refused to meaningfully participate in settlement negotiations in good faith. This places him in a position where he is unable and unwilling to perform a necessary duty of a Guardian ad Litem, to consider the non-judicial resolution of the case for a fair and reasonable settlement amount, which would eliminate the risk of trial. The guardian's past interest in compensation for himself, although this was denied by him at the first hearing, and his belief that he is entitled to receive compensation over and above a statutory, court-approved guardian fee for the care of the minor, for his inconvenience and suffering, places him in a conflict of interest

position with the minor.

## II. LEGAL STANDARDS

### A. A Guardian ad litem's appointment and duties

"A guardian ad litem is an officer of the court appointing him or her." *County of Los Angeles v. Superior Court (Crystal B., Steven G., Anita G.)*, 91 Cal.App.4th 1303, 1311 (2001) citing *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 13, 118 Cal.Rptr. 21, 529 P.2d 53; *Torres v. Friedman* (1985) 169 Cal.App.3d 880, 887). "The appointment of a guardian ad litem is not a bare technicality and the office of guardian involves more than perfunctory or shadowy duties. It is the duty of a guardian ad litem to prosecute or defend a suit, as the case may be." *Brandon G. v. Gray*, 3 Cal.Rptr.3d 330, 339 (2003) citing *Berry v. Chaplin,* 74 Cal.App.2d 652, 657-658 (1946); *see also In re Christina B.*, 19 Cal.App.4th 1441 (1993).

"A guardian ad litem is not a party to the action, but merely a party's representative." *In re Christina B.*, 19 Cal.App.4th 1441 (1993) (citing *In re Marriage of Higgason,* 10 Cal.3d 476, 484 (1973), *overruled on other grounds by In re Marriage of Dawley,* 17 Cal.3d 342, 352, (1976); *Sarracino v. Superior Court,* 13 Cal.3d 1, 13 (1974); *J.W. v. Superior Court,* 17 Cal.App.4th 958, 964 (1993).

"[T]he guardian oversees any attorney representing [a] minor's litigation-related interests and may make tactical and even fundamental decisions affecting the litigation, but always with the interest of the minor in mind. [Citation.]." *Brandon G. v. Gray*, 3 Cal.Rptr.3d 330, 339 (2003) citing *County of Los Angeles v. Superior Court* 91 Cal.App.4th 1303, 1311 (2001). "The

guardian ad litem has the right to control the litigation on behalf of the minor, subject to the court's approval." *County of Los Angeles v. Superior Court (Crystal B., Steven G., Anita G.)*, 91 Cal.App.4th 1303, 1311 (2001) (citing *De Los Santos v. Superior Court*, 27 Cal.3d 677, 683 (1980); *Torres v. Friedman*, 169 Cal.App.3d at p. 887). "The guardian ad litem's powers include the right to compromise or settle the action (Code Civ. Proc., § 372, subd. (a)), to control the procedural steps incident to the conduct of the litigation (*Cloud v. Market Street Ry. Co.*, 74 Cal.App.2d 92, 101-103 (1946)), and, with the approval of the court, to make stipulations or concessions that are binding on the minor, provided they are not prejudicial to the latter's interests." *County of Los Angeles*, 91 Cal.App.4th at 1311 (citing *Robinson v. Wilson*, 44 Cal.App.3d 92, 99-107 (1974)); *see also In re Sara D.*, 87 Cal.App.4th 661,668 (2001), *Scruton v. Korean Air Lines Co.*, 39 Cal.App.4th 1596, 1603 (1995), *De Los Santos v. Superior Court*, 27 Cal.3d 677, 683-684 (1980).

As an officer of the court, the guardian ad litem has full responsibility to assist the Court to secure a just, speedy and inexpensive determination of the action." Fed. R. Civ. Pro. 17(b),(c); Cal. Civ. Pro. Code § 372; *Leung v. Dulles*, 226 F.2d 74, 82 (9th Cir.1955). "It is the duty of the guardian and the attorney to protect the rights of the minor, and it is the duty of the court to see that such rights are protected." *In re Christina B.*, 19 Cal.App.4th 1441, 23 Cal.Rptr.2d 918 (1993) citing *Berry v. Chaplin*, 74 Cal.App.2d 652 at pp. 657-658 (1946) (italics omitted).

B. A Guardian ad litem's Removal

"The removal of a guardian *ad litem* is within the sound discretion of the trial court." *In re Emery's Estate*, 199 Cal.App.2d 22, 26 (1962). The Court has the discretion to approve or disapprove of a guardian's continuing service, and the court has the duty to see that a minor plaintiff's interests are adequately protected; a conflict of interest between a minor party and the minor's guardian will render the latter an inappropriate guardian. Fed. R. Civ. Pro. 17(c); *Leung v. Dulles*, 226 F.2d at 82; *Gardner by Gardner v. Parson*, 874 F.2d 131, 138 (3d Cir.1989); *M.S. v. Wermers*, 557 F.2d 170, 174-75 (8th Cir.1977). "An adverse interest is a ground for removing a guardian ad litem." *Estate of Lacy*, 54 Cal.App.3d 172 (1975) (citing *Estate of Emery*, 199 Cal.App.2d 22, 26 (1962). A conflict between the interests of the Guardian ad Litem and the interests of the incompetent which could seriously affect the Guardian and his or her duties is cause for removal. *In re Emery's Estate*, 199 Cal.App.2d 22, 26 (1962).

III. DISCUSSION

Defendant United States raises the issue of whether Hugo Yamamoto, plaintiff's father, is competent to continue representing plaintiff as guardian ad litem. Defendant suggests the events of settlement conferences held July 13, 2002, October 3, 2002, February 27 and April 30th, 2003 have identified significant issues about Mr. Yamamoto's competence and ability to represent the best interests of plaintiff. The July 13, 2002 meeting was a private settlement conference between two defendants and plaintiff, attended by the Honorable Kenneth D.

Gack as mediator. This settlement conference was unsuccessful. Judge Gack was subsequently appointed mediator, pursuant to stipulations by all parties, and all defendants and plaintiff convened again with Judge Gaek in San Francisco on October 3, 2002. After the second mediation was unsuccessful, upon stipulation of all parties, Judge Gaek forwarded a confidential report about the mediation to Magistrate Judge Snyder. Judge Snyder convened a third, unsuccessful, settlement conference on February 27, 2003. A fourth unsuccessful settlement conference was convened by Magistrate Judge Snyder on April 30, 2003. The lack of success of the settlement conference was attributed to Mr. Yamamoto's refusal to authorize good faith settlement negotiations on behalf of the Plaintiff.

Defendant observes that, to date, plaintiff's guardian has not authorized his attorneys to present any counteroffer at any level to defendants' proposals for settlement. Plaintiff's guardian refused to authorize a counteroffer at any of the three settlement conferences.

Defendant United States proffers three significant areas of concern:

1) Mr. Yamamoto is the sole full-time caretaker for his profoundly disabled son. The high degree of self-sacrifice may have left Mr. Yamamoto without the time, energy or concentration to appreciate the complex medical and legal information he needs to make informed, appropriate decisions in his role as guardian ad litem. Doc. 121 at 4. Defendant United States asserts Mr. Yamamoto is a diligent and loving caretaker, and his functioning as the personal guardian of

the plaintiff is not in question.

2) Mr. Yamamoto's language difficulties "may not be surmountable even with translators." Doc. 121 at 5. Neither English nor Spanish is Mr. Yamamoto's first language, though "he gets along for most day-to-day usage in Spanish." *Id.* There were apparently "instances of confusion" during Mr. Yamamoto's deposition, "despite the use of a Spanish translator." Defendant United States notes that this is a complex medical malpractice case, the guardian ad litem must be able to evaluate the risks and benefits of settlement or continuing litigation where 35 designated expert witnesses, mostly physicians, "will weigh in on either liability or damages issues," and such a task may be insurmountably difficult due to Mr. Yamamoto's language barriers. Doc. 121 at 5. Defendant United States explains that the mediators have commented they are confident "that Mr. Yamamoto does not understand even some of the less murky points they have tried to explain to him," such as the MICRA cap on general damages and the fact that he does not have a pending claim for his own damages. Doc. 121 at 5.

3) According to defendants, a question exists as to whether Mr. Yamamoto is able to distinguish between the best interests of his child and his own interests. Doc. 121 at 5-6. Mr. Yamamoto has inappropriately taken positions during settlement negotiations that appear adverse to his son's best interest. Mr. Yamamoto has apparently raised questions about compensation directly to himself for his own

problems arising from his son's conditions and has questioned whether or not the doctors will be punished, or suffer, as he has. *Id.* Defendants suggest Mr. Yamamoto may desire a trial "just to have a wider audience for his relation of the story of his family's suffering." Doc. 121 at 5-6.

Defendants contend Mr. Yamamoto has a conflict of interest if he risks a settlement that would be fair and meet his son's needs in order to air his own emotions or seek additional damages for injuries to himself. Doc. 121 at 6.

The confidential report regarding the VDRP mediation, submitted under seal by the presiding mediator Judge Gack, supports defendants' allegations that a conflict of interest exists. Doc. 128 (under seal). This document presents strong evidence that Mr. Yamamoto is not acting in the best interests of his child, as is his legal obligation as his son's guardian ad litem. This document observes that Mr. Yamamoto appears to be intransigent and concerned with his own pain and suffering and how he will be compensated for injury to himself versus compensation for injury to the plaintiff.

The confidential report of Magistrate Judge Sandra M. Snyder, submitted under seal, provides further evidence of Mr. Yamamoto's inappropriate behavior while acting as his son's guardian ad litem during the settlement negotiations.

It appears Mr. Yamamoto's is unable to comprehend the nature of plaintiff's suit and available remedies *for plaintiff as opposed to himself*. "A guardian ad litem is not a party to the action, but merely a party's representative." *In re Christina*

*B.*, 19 Cal.App.4th 1441 (1993). Mr. Yamamoto appears to be uncomfortable with and does not seem to trust his son's attorneys. He demonstrates an inability or incapacity to work with his son's attorneys in directing the litigation at any stage, as required of a guardian ad litem. *See Brandon G. v. Gray*, 3 Cal.Rptr.3d 330, 339 (2003) citing *County of Los Angeles v. Superior Court* 91 Cal.App.4th 1303, 1311 (2001). Mr. Yamamoto apparently has refused to allow his son's attorneys to settle the case unless funds are paid directly to Mr. Yamamoto, with the expectation that Mr. Yamamoto should be the sole arbiter of how to spend the money for the benefit of his son. Mr. Yamamoto has explicitly demanded he, himself, be compensated for his own suffering and for the trauma of having to care for his son. Mr. Yamamoto appears to have refused an offer to have a private paid nurse care for his son, as part of the settlement agreement, and instead insists *he be paid personally* to care for his son. Mr. Yamamoto appears willing to risk losing any possibility of a beneficial settlement or positive litigation outcome on behalf of plaintiff, rather than allow the plaintiff's attorneys, or the court, to direct Mr. Yamamoto what to do with the money that he believes is due him (as opposed to money due the plaintiff).

While the guardian at litem is not required to accept any settlement offer, he or she *absolutely must act in the best interests of the child*. *See In re Christina B.*, 19 Cal.App.4th 1441, 23 Cal.Rptr.2d 918 (1993); *Berry v. Chaplin*, 74 Cal.App.2d 652 at pp. 657-658 (1946). "It is the duty of the court to see that such rights are protected." *See id.* Mr. Yamamoto's refusal to accept any settlement offer is not at issue in this hearing;

Mr. Yamamoto's refusal to *consider* any settlement offer that does not also compensate Mr. Yamamoto for his own pain and suffering is a very serious issue. *Mr. Yamamoto has expressed a clear intent to demand compensation for himself which places him in a direct conflict of interest between himself and plaintiff, his son.* Mr. Yamamoto's intransigence interferes with, and does not aid in, the prosecution of the case as required under the law. *See Brandon G. v. Gray*, 3 Cal.Rptr.3d 330, 339 (2003). Mr. Yamamoto is not meeting his obligations and duties as legal guardian ad litem to his son and is failing, fully and objectively, to represent his son's best interests to the exclusion of his own personal interests or predilections.

The court recognizes Mr. Yamamoto's suffering; however, Mr. Yamamoto is a court-appointed guardian ad litem to represent his son's interests, and *only* his son's interests. Mr. Yamamoto was capable of instituting his own suit. He has done so. He may not include recovery for his own pain and suffering as part of the settlement negotiations on behalf of his son's case. The guardian ad litem is not the plaintiff. *See e.g., In re Christina B.*,19 Cal.App.4th 1441, 23 Cal.Rptr.2d 918 (1993) ("A guardian ad litem is not a party to the action, but merely a party's representative."). This concept has been explained to Mr. Yamamoto repeatedly by two separate Judges involved in the settlement negotiations, as well as by his son's attorneys. Despite this knowledge, Mr. Yamamoto refuses to recognize and accept the applicable law and has on multiple occasions expressed his desire to be compensated for his own pain and suffering. He has refused to cooperate in the prosecution of the litigation,

has refused to submit a settlement demand on behalf of the minor on at least two occasions. He has demonstrated he is unable to distinguish between his own needs and the needs of his son. Mr. Yamamoto's language barrier, combined with his expressed conflict of interest, is an insurmountable impediment to Mr. Yamamoto's ability to act as a competent or effective guardian ad litem for his son.

The Court has the discretion to approve or disapprove of a guardian's continuing service. *The court has the duty to see that a minor plaintiff's interests are adequately protected.* A conflict of interest between a minor party and the minor's guardian renders the latter an inappropriate guardian. Fed. R. Civ. Pro. 17(c); *Leung v. Dulles*, 226 F.2d at 82; *Gardner by Gardner v. Parson*, 874 F.2d 131, 138 (3d Cir.1989); *M.S. v. Wermers*, 557 F.2d 170, 174-75 (8th Cir.1977). "An adverse interest is a ground for removing a guardian ad litem." *Estate of Lacy*, 54 Cal.App.3d 172 (1975) (citing *Estate of Emery*, 199 Cal.App.2d 22, 26 (1962). An actual conflict between the interests of the guardian ad litem and the interests of the minor, which seriously compromises the guardian's ability to perform his duties. This is cause for removal. *In re Emery's Estate*, 199 Cal.App.2d 22, 26 (1962).

The evidence is clear and convincing that Mr. Hugo Yamamoto, as an officer of the court, is unable to perform his responsibility to assist the court to secure a just, speedy, and inexpensive determination of the case of his son, Hector Yamamoto. By his unwillingness and refusal to explore a settlement of the case, Mr. Yamamoto is unable to protect the

rights of the minor by eliminating the risk of trial, if that is possible. Based on the totality of this evidence, Mr. Yamamoto has proved himself to be unable and unwilling to perform his duties as Guardian ad Litem for his son, Hector. Mr. Yamamoto's conflict of interest with his son over compensation for Mr. Yamamoto, is an additional reason Mr. Yamamoto is an unsuitable guardian ad litem.

IT IS ORDERED that Hugo Yamamoto is REMOVED as guardian ad litem for plaintiff, Hector Yamamoto, for any purpose in this lawsuit.

FURTHER ORDERED that Honorable Eugene Krum, retired Judge of the Superior Court of California, is appointed to serve in the place and stead of Mr. Yamamoto as guardian ad litem for Hector Yamamoto, a minor, to serve without bond.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED:

1. Mr. Yamamoto is REMOVED as plaintiff Hector Yamamoto's guardian ad litem, effective immediately;

2. Honorable Eugene Krum of Fresno, California, is APPOINTED as plaintiff Hector Yamamoto's guardian ad litem, effective immediately, to serve without bond.

SO ORDERED.

DATED: November 19, 2003.

Oliver W. Wanger
UNITED STATES DISTRICT JUDGE

jv

United States District Court
for the
Eastern District of California
November 20, 2003

* * CERTIFICATE OF SERVICE * *

1:00-cv-05588

Yamamoto

v.

USA

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on November 20, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Donald J Sullivan OWW SMS
44 Montgomery Street
Suite 1050
San Francisco, CA 94104

Richard C Watters
Miles Sears and Eanni
2844 Fresno Street
Fresno, CA 93721

Linda Anderson
United States Attorney's Office
1130 O Street
Room 3654
Fresno, CA 93721

B John Briegleb
Dummit Faber Briegleb and Diamond
1661 Garden Highway
Suite 100
Sacramento, CA 95833-9706

Rachelle C Sanchez
Riggio Mordaunt and Kelly
2509 West March Lane
Suite 200

Stockton, CA 95207

Michael R Mordaunt
Riggio Mordaunt and Kelly
2509 West March Lane
Suite 200
Stockton, CA 95207

James M Nelson
Donnelly and Nelson
2401 Shadelands Drive
Suite 120
Walnut Creek, CA 94598-2493

Jack L. Wagner, Clerk

BY: ______________
Deputy Clerk